IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| HENRY R. B., | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 4:22-CV-00138-JFJ |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
|       Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Henry R. B. seeks judicial review of the decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court affirms the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.    General Legal Standards and Standard of Review**

"Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established

by "objective medical evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functioning capacity ("RFC"), whether the impairment prevents the claimant from continuing her past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v). If a claimant satisfies her burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II. Procedural History and the ALJ's Decision

Plaintiff, then a 45-year-old male, applied for Title XVI supplemental security income on July 23, 2018, alleging a disability onset date of January 1, 2018, later amended to July 23, 2018. R. 48-49, 142, 358-362. Plaintiff claimed he was unable to work due to conditions including arthritis, right ankle swelling, left knee arthritis, lumbar spine problems, sciatica, and carpal tunnel in wrist and shoulder. R. 377. Plaintiff's claim for benefits was denied initially on May 10, 2019, upon reconsideration on July 9, 2019, and by an ALJ after a hearing on April 8, 2020. R. 70-95, 104-138, 142-157. The Appeals Council granted Plaintiff's request for review, and by Order dated September 29, 2020, remanded the case back to an ALJ for further proceedings. R. 162-164. On remand, the ALJ conducted another hearing by telephone on June 2, 2021. R. 44-69. The ALJ issued a second decision on June 11, 2021, again denying benefits and finding Plaintiff not disabled

because he could perform other work existing in the national economy. R. 15-38. The Appeals Council denied review, and Plaintiff appealed. R. 1-3; ECF No. 2.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of July 23, 2018. R. 17. At step two, the ALJ found that Plaintiff had the following severe impairments: lumbar degenerative disc disease; obesity; osteoarthritis of the left knee; osteoarthritis of the right ankle; major depressive disorder; generalized anxiety disorder; and borderline intellectual functioning. *Id.* The ALJ found Plaintiff's medically determinable impairments of benign prostatic hypertrophy, prurigo nodularis, and ingrown toenails to be non-severe. R. 18. The ALJ further found Plaintiff's carpal tunnel syndrome, tinnitus, hearing loss, use of an assistive device, and obstructive sleep apnea to be non-medically determinable. *Id.* At step three, the ALJ found that Plaintiff had no impairment or combination of impairments that was of such severity to result in listing-level impairments. *Id.* In assessing Plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found that Plaintiff had moderate limitations in the two areas of (1) understanding, remembering or applying information and (2) concentrating, persisting or maintaining pace; and he had mild limitations in the two areas of (1) interacting with others and (2) adapting or managing oneself. R. 20-24.

After evaluating the objective and opinion evidence and Plaintiff's statements, the ALJ concluded that Plaintiff had the RFC to perform light work with the following limitations:

> [He] can lift no more than 20 pounds occasionally and 10 pounds frequently. He can sit, stand or walk 6 hours in an 8-hour day. He can occasionally climb ramps and stairs. He can occasionally balance, stoop, kneel, crouch and crawl. He is unable to climb ladders, ropes or scaffolding. He can occasionally operate pedals and foot controls. Reasoning level of 3 and below as defined by appendix C of the DOT of applying commonsense understanding to carry out instructions furnished in written, oral or diagrammatic form. He can deal with problems involving several concrete variables in or from standardized situations. He can have occasional contact with coworkers and supervisors. He can have cursory and superficial contact with the general public (working with things rather than people). The work

4

> needs to be repetitive, routine and rote. No strict production standards (fast-paced integral team assembly line work or poultry processing).

R. 26. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. R. 36. Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other unskilled light work, such as Merchandise Marker, Mail Sorter, and Hotel Housekeeper. R. 38. The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). *Id.* Based on the VE's testimony, the ALJ concluded these positions existed in significant numbers in the national economy. *Id.* Accordingly, the ALJ concluded Plaintiff was not disabled. *Id.*

**III.    Issue**

Plaintiff raises a single point of error in his challenge to the denial of benefits. Specifically, Plaintiff contends the ALJ improperly evaluated the medical source opinion evidence from psychological consultative examiner Joseph James, PsyD, LPC, which resulted in a flawed RFC. ECF No. 10.

**IV.    Analysis - ALJ Properly Evaluated Dr. James' Medical Source Opinion**

Plaintiff argues the ALJ failed to properly explain why he rejected one of Dr. James' limitations in the medical source opinion he found to be only partially persuasive. For claims filed after March 27, 2017, such as Plaintiff's claim, 20 C.F.R. § 416.920c provides that the ALJ will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 416.920c(a).[1] Instead, the ALJ now need only articulate how persuasive he

---

[1] In adopting the revised rules, the Social Security Administration explained: "To account for the changes in the way healthcare is currently delivered, we are adopting rules that focus more on the content of medical opinions and less on weighing treating relationships against each other. This approach is more consistent with current healthcare practice." *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844-01, at 5854, 2017 WL 168819 (Jan. 18, 2017).

5

finds each medical source's opinion. 20 C.F.R. § 404.1520c(b). Persuasiveness is based primarily on an opinion's supportability and consistency, and the ALJ must explain how he considered those two factors. 20 C.F.R. § 416.920c(b)(2).[2] The ALJ may, but is typically not required to, discuss other considerations that may affect the persuasiveness of a medical opinion, such as the source's relationship with the claimant, the source's area of specialization, and other factors tending to support or contradict a medical opinion. 20 C.F.R. § 416.920c(b)(2)-(c).

In this case, Dr. James completed a psychological consultative evaluation in April 2019 to determine whether Plaintiff could complete work-related mental activities. R. 517-525. At the evaluation, Plaintiff described symptoms of depression, and he reported he had been taking Celexa for depression but had never been in psychotherapy or psychiatrically hospitalized. R. 517-518. Dr. James conducted a depression questionnaire ("PHQ-9"), which suggested moderate symptoms of depression. R. 518. Dr. James observed Plaintiff to be fully oriented, alert, with unkempt appearance. R. 519. Plaintiff's speech was normal, affect was calm and varied appropriately, and his mood was good. *Id.* Plaintiff's thought processes appeared to be logical, sequential, and goal driven. *Id.* Plaintiff's memory appeared intact, attention and concentration were sufficient for gathering of pertinent details, there was no evidence of psychosis or hallucinations, and he appeared to be a good historian. *Id.* His demeanor was agreeable, though he appeared to display below average intelligence. *Id.* Dr. James performed a Mini Mental Status Examination ("MMSE"), which resulted in a score of 26/30, suggesting that Plaintiff's reported difficulties were severe enough to inhibit his ability to demonstrate basic cognitive functions. *Id.* Dr. James noted

---

[2] For supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." 20 C.F.R. § 416.920c(c)(1). For consistency, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 416.920c(c)(2).

diagnostic impressions of Adjustment Disorder with Mixed Depression and Anxiety and wanted to rule out Borderline Intellectual Functioning. *Id.*

Based on his examination, Dr. James opined that Plaintiff displayed the intellectual and psychological capacity to perform activities of daily living but was moderately impaired and did not perform them due to physical limitations. R. 520. Because Plaintiff displayed evidence of significant cognitive defect, his ability to understand work-related activities might be impaired. *Id.* His ability to remember work-related information and to concentrate and persist in work-related tasks was estimated to be adequate. *Id.* Most significant to this appeal, Dr. James found in the category of Social Interaction and Adaptability that Plaintiff's ability to socially interact and adapt in work-related environments was "estimated to be intermittently impaired" based on a history of social isolation and often appearing aloof or withdrawn. *Id.*

The ALJ summarized Dr. James' examination and found Dr. James' opinion to be partially persuasive. R. 30, 34. The ALJ explained that the opinion was mostly supported by Dr. James' evaluation of Plaintiff, which found physical limitations and/or medical circumstances, significant cognitive deficit, adequate memory, sufficient attention and concentration, social isolation, and withdrawn manner. R. 34 (citing R. 518-519). However, the ALJ found Dr. James' opinion was not fully supported by his evaluation, which noted Plaintiff was alert, oriented, dressed appropriately, and maintaining adequate eye contact. *Id.* (citing R. 519). Dr. James also reported Plaintiff's speech was normal, affect calm, and affect varied appropriately during the interview. *Id.* Dr. James found Plaintiff's mood was good, his thought processes were logical, sequential and goal driven, and his memory appeared intact. *Id.* Plaintiff's attention and concentration were sufficient for the gathering of pertinent details, he was a good historian, and he was agreeable. *Id.*

7

The ALJ further found Dr. James' opinion was inconsistent with other evidence in the record. R. 34. In support, the ALJ explained that other evidence indicated Plaintiff was alert and oriented with a normal mood and affect. *Id.* (citing R. 510, 613, 619, 680, 687). Plaintiff was cheerful and cooperative with intact recent and remote memory. *Id.* (citing R. 510, 607, 613, 619). Finally, other evidence found Plaintiff had normal insight, judgment, and appearance. *Id.* (citing R. 531, 540, 595, 607, 612, 645, 655, 663, 679, 687, 695, 705, 714). Based on this evidence, coupled with Dr. James' failure to define "moderately impaired," "impaired," "adequate," or "intermittently impaired" in vocational terms or limitations, the ALJ concluded that Dr. James' opinion was only partially persuasive. R. 34.

Plaintiff raises one challenge to the ALJ's findings regarding Dr. James' opinion. Specifically, he argues the ALJ failed to provide a supported reason for rejecting Dr. James' limitation that the Plaintiff's ability to adapt will be "intermittently impaired." He argues that, because Plaintiff's adaptability was not addressed in the RFC assessment, the RFC conflicts with Dr. James' opinion. He argues that the ALJ's cited mental findings regarding Dr. James' opinion do not directly relate to adaptability in the workplace. Therefore, a rejection of a limitation involving Plaintiff's ability to adapt must be explained separately. Finally, Plaintiff argues that findings from Dr. James' objective testing using the MMSE and the PHQ-9 relate to and contribute to Plaintiff's ability to adapt, but the ALJ failed to explain how this objective testing impacted his decision regarding Plaintiff's intermittent impairment in ability to adapt in the workplace.

Plaintiff's arguments are unpersuasive. The ALJ adequately explained his reasons for not fully adopting Dr. James' opinion and finding it only partially persuasive. In particular, the ALJ explained that the term "impaired" and the phrase "intermittently impaired" were not defined in vocational terms. R. 34. While Plaintiff takes issue with this finding and speculates on the possible

8

meaning of "intermittent," the ALJ's explanation is nonetheless legitimate, and the ALJ was not required to adopt an adaptability limitation that he found vague in vocational terms. Plaintiff points to no evidence to contradict the ALJ's findings regarding Dr. James' opinion, and he identifies no agency guidance to explain the meaning of "intermittent" in disability terms.

In addition, contrary to Plaintiff's argument, the ALJ did not simply "ignore" Dr. James' adaptability opinion. It appears the ALJ incorporated Dr. James' estimate of Plaintiff's ability to adapt by limiting the RFC to "occasional contact with coworkers and supervisors" and "cursory and superficial contact with the general public (working with things rather than people)." R. 26. The ALJ appropriately considered adaptability in the context of social function, because Dr. James' opinion regarding adaptability fell under the heading of "Social Interaction and Adaptability." R. 520. Dr. James explained that Plaintiff's functioning in that area was intermittently impaired, because Plaintiff "has a history of social isolation, often appearing aloof or withdrawn." *Id.* It appears the ALJ found this part of Dr. James' opinion supported by his finding that Plaintiff experienced social isolation and was withdrawn. R. 34. Thus, the ALJ did not ignore Dr. James' limitation relating Plaintiff's ability to adapt, but rather accounted for adaptation limitations relating to social contacts. *See Oaks v. Saul*, No. 4:18-cv-75-PK, 2019 WL 4110535, at *3 (D. Utah Aug. 29, 2019) (applying prior regulations, finding that ALJ "permissibly translated its rather vague limitations into concrete vocational limitations" after giving medical opinion some weight). Notably, Plaintiff does not explain what additional RFC limitations would have been warranted based on Dr. James' opinion.

Finally, the MMSE and PHQ-9 testing do not diminish the ALJ's conclusions regarding Plaintiff's adaptability. The ALJ was not required to explain how this testing impacted his decision

9

to not expressly adopt Dr. James' adaptability limitation into the RFC.  Plaintiff fails to explain how these testing results translate to an adaptability limitation.

The Court identifies no error in the ALJ's evaluation of Dr. James' opinion, because the ALJ's explanation for finding the opinion partially persuasive was legally proper and supported by substantial evidence.  The ALJ appropriately found that Dr. James' opinion was only partially persuasive due to (1) his failure to define "intermittently impaired" in vocational terms and/or limitations, (2) the lack of complete support for Dr. James' opinion in his examination, and (3) lack of consistency with other evidence in the record.  R. 34.

V.      Conclusion

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **AFIRMED.**

**SO ORDERED** this 26th day of September, 2023.

_____
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**